[L.A. No. 31100. June 2, 1980.]

GORDON TAMENY, Plaintiff and Appellant, v.
ATLANTIC RICHFIELD COMPANY et al.,
Defendants and Respondents.

COUNSEL

Richard P. Carroll, James R. Carroll and John J. Hartford for Plaintiff and Appellant.

Wylie Aitken, Robert E. Cartwright, Edward I. Pollock, Glen T. Bashore, Stephen I. Zetterberg, J. Nick DeMeo, Sanford M. Gage, Joseph Posner, Laufer & Roberts, David Laufer, Edward A. Friend, John J. Hartford, John R. Hillsman and McGuinn & Moore as Amici Curiae on behalf of Plaintiff and Appellant.

Stephen D. Miller, Miller, Glassman & Browning, Jane D. Saltsman and Carol S. Boyk for Defendants and Respondents.

OPINION

**TOBRINER, J.**—Plaintiff Gordon Tameny instituted the present action against his former employer, Atlantic Richfield Company (Arco),[1] alleging that Arco had discharged him after 15 years of service because he refused to participate in an illegal scheme to fix retail gasoline prices. Plaintiff sought recovery from Arco on a number of theories, contending, inter alia, that Arco's conduct in discharging him for refusing to commit a criminal act was tortious and subjected the employer to liability for compensatory and punitive damages under normal tort principles.

Arco demurred to the complaint, contending that plaintiff's allegations, even if true, did not state a cause of action in tort. Arco conceded that California authorities establish that an employee who has been fired for refusing to perform an illegal act may recover from his former employer for "wrongful discharge." Arco contended, however, that the employee's remedy in such cases sounds only in contract and not in tort. The trial court accepted Arco's argument and sustained a general demurrer to plaintiff's tort causes of action. Plaintiff now appeals from the ensuing judgment.

For the reasons discussed below, we have concluded that the trial court judgment must be reversed with respect to the issue of tort liabil-

---

[1]Plaintiff's complaint named Arco, J. C. McDermott (an Arco supervisor) and Does 1 through 10 as defendants. For convenience, we refer to all of these parties as either Arco or defendants.

ity. As we shall explain, past cases do not sustain Arco's contention that an employee who has been discharged because of his refusal to commit an illegal act at his employer's behest can obtain redress only by an action for breach of contract. Rather, as we shall see, the relevant authorities both in California and throughout the country establish that when an employer's discharge of an employee violates fundamental principles of public policy, the discharged employee may maintain a tort action and recover damages traditionally available in such actions.

### 1. *The facts and proceedings below.*

Because this appeal arises from a judgment entered after the sustaining of a general demurrer, we must, under established principles, assume the truth of all properly pleaded material allegations of the complaint in evaluating the validity of the trial court's action. (See, e.g., *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal. Rptr. 88, 468 P.2d 216]; *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241].)

According to the complaint, plaintiff was hired by Arco as a relief clerk in 1960, received regular advancements, merit increases and commendatory evaluations in his initial years with the company, and, in 1966, was promoted to the position of retail sales representative, the position he held when discharged by Arco in 1975. His duties as a retail sales representative included among other matters the management of relations between Arco and the various independent service station dealers (franchisees) in his assigned territory of Bakersfield.

The complaint alleges that beginning in the early 1970s, Arco, Arco's district manager McDermott, and others engaged in a combination "for the purpose of reducing, controlling, stabilizing, fixing, and pegging the retail gasoline prices of Arco service station franchisees." According to the complaint, defendants' conduct in this regard violated express provisions of the Sherman Antitrust Act (15 U.S.C. § 1 et seq.), the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.), and a specific consent decree which which had been entered in a federal antitrust prosecution against Arco.[2]

---

[2]In *United States* v. *The American Oil Co.* (D.N.J. 1971) Civ. No. 370-65, the court enjoined Arco and its employees and agents, inter alia, from "entering into or adhering to any agreement, arrangement or understanding with any distributor or dealer to fix, maintain, or stabilize prices at which any distributor or dealer shall sell gasoline," and from "coercing any of its distributors or dealers to adhere to [its] suggested retail price

The complaint further asserts that during the early 1970s, defendants increasingly pressured plaintiff to "threaten [and] cajole...the so-called 'independent' service station dealers in [his] territory to cut their gasoline prices to a point at or below a designated level specified by Arco." When plaintiff refused to yield to his employer's pressure to engage in such tactics, his supervisor told him that his discharge was imminent, and soon thereafter plaintiff was fired, effective March 25, 1975. Although at the time of the discharge Arco indicated in its personnel records that plaintiff was being fired for "incompetence" and for "unsatisfactory performance," the complaint alleges that "the sole reason" for plaintiff's discharge was his refusal to commit the "grossly illegal and unlawful acts which defendants tried to force him to perform."[3]

On the basis of the foregoing allegations, plaintiff sought relief on five separate theories. The complaint alleged, in particular, three tort causes of action (wrongful discharge, breach of the implied covenant of good faith and fair dealing, and interference with contractual relations), an action for breach of contract, and an action for treble damages under the Cartwright Act. Defendants demurred to the complaint, and the trial court sustained the demurrer as to all counts except for the count alleging a breach of contract.[4] Thereafter, plaintiff voluntarily dismissed the contract count and the trial court then dismissed the entire action and entered judgment in favor of Arco. Plaintiff appeals from the adverse judgment.[5]

---

for gasoline provided, however, that...nothing in this Judgment shall prohibit any defendant from unilaterally suggesting prices to its distributors or dealers for the sale of gasoline to third persons...."

[3]Contrary to Arco's contention, the allegations of the complaint summarized above adequately assert that plaintiff's discharge was "proximately caused" by his refusal to violate the antitrust laws. Although in another passage of the complaint plaintiff states that if he had complied with defendants' orders he would "in all probability" have been retained as an employee, that qualified language does not negate the more specific allegations of causation and certainly would not justify the sustaining of defendant's general demurrer without leave to amend.

[4]Although the trial court sustained the demurrer to the antitrust count with leave to amend, plaintiff chose to stand on that count as initially pleaded.

[5]In the briefs filed in the Court of Appeal, plaintiff challenged the trial court's ruling with respect to his treble damage antitrust claim as well as the ruling on the various tort counts. After the Court of Appeal had affirmed the trial court judgment in all respects, however, plaintiff did not contest the Court of Appeal's ruling on the treble damage claim in his petition for hearing to this court, but instead confined his objections to the portion of the Court of Appeal decision which had affirmed the dismissal of the tort causes of action.

Thereafter, when an amicus filed a brief in this court discussing, inter alia, the treble

2. ▮ *An employee discharged for refusing to engage
in illegal conduct at his employer's request
may bring a tort action for wrongful discharge.*

Under the traditional common law rule, codified in Labor Code section 2922,[6] an employment contract of indefinite duration is in general terminable at "the will" of either party. Over the past several decades, however, judicial authorities in California and throughout the United States have established the rule that under both common law and the statute an employer does not enjoy an absolute or totally unfettered right to discharge even an at-will employee. In a series of cases arising out of a variety of factual settings in which a discharge clearly violated an express statutory objective or undermined a firmly established principle of public policy, courts have recognized that an employer's traditional broad authority to discharge an at-will employee "may be limited by statute...or by considerations of public policy." (*Petermann v. International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 188 [344 P.2d 25] (discharge for refusal to commit perjury); see, e.g., *Glenn v. Clearman's Golden Cock Inn, Inc.* (1961) 192 Cal.App.2d 793, 796-797 [13 Cal.Rptr. 769] (discharge because of union membership and activity); *Wetherton v. Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168, 174-175 [79 Cal.Rptr. 543] (same); *Montalvo v. Zamora* (1970) 7 Cal.App.3d 69 [86 Cal.Rptr. 401] (discharge for designation of nonunion bargaining representative); *Nees v. Hocks* (1975) 272 Ore. 210 [536 P.2d 512] (discharge for serving on jury); *Frampton v. Central Indiana Gas Company* (1973) 260 Ind. 249 [297 N.E.2d 425] (discharge for filing worker's compensation claim); *Harless v. First Nat. Bank in Fairmont* (1978) — W.Va. — [246 S.E.2d 270] (discharge for reporting violations of consumer protection laws).)[7]

---

damage count, defendants filed a supplementary brief contending that plaintiff had abandoned the antitrust claim. The amicus then filed a supplementary brief arguing that plaintiff indeed had not abandoned that contention; plaintiff nevertheless did not respond to the defendants' claim by letter or brief and did not raise the treble-damage issue at oral argument. Although we recognize that we have jurisdiction to determine the antitrust issue (see *Menchaca v. Helms Bakeries, Inc.* (1968) 68 Cal.2d 535, 541, fn. 1 [67 Cal.Rptr. 775, 439 P.2d 903]), we believe that under the circumstances we may appropriately conclude that plaintiff does not press and hence abandons the treble-damage claim in this court.

[6]Section 2922 provides in relevant part: "An employment, having no specified term, may be terminated at the will of either party on notice to the other...."

[7]The recent decisions in this area have drawn upon a considerable body of academic commentary exposing the arbitrariness of an absolute right to discharge in light of contemporary employment relationships and the incompatibility of such a right to the

*Petermann* v. *International Brotherhood of Teamsters, supra,* one of the seminal California decisions in this area, imposes a significant condition upon the employer's broad power of dismissal by nullifying the right to discharge because an employee refuses to perform an unlawful act. In *Petermann,* the plaintiff, who had been employed as a business agent by defendant union, brought a "wrongful discharge" action against the union alleging that he had been dismissed from his position because he had refused to follow his employer's instructions to testify falsely under oath before a legislative committee, and instead had given truthful testimony. Emphasizing that the employer's instructions amounted to a directive to commit perjury, a criminal offense, plaintiff maintained that the employer acted illegally in discharging him for refusing to follow such an order.

The *Petermann* court recognized that in the absence of contractual limitations an employer enjoys broad discretion to discharge an employee, but concluded that as a matter of "public policy and sound morality" the employer's conduct, as alleged in the complaint, could not be condoned. The court explained: "The commission of perjury is unlawful. (Pen. Code, § 118). . . . It would be obnoxious to the interests of the state and contrary to public policy and sound morality to allow an employer to discharge any employee, whether the employment be for a designated or unspecified duration, on the ground that the employee declined to commit perjury, an act specifically enjoined by statute. . . . The public policy of this state as reflected in the Penal Code sections referred to above would be seriously impaired if it were to be held that one could be discharged by reason of his refusal to commit perjury. To hold that one's continued employment could be made contingent upon his commission of a felonious act at the instance of his employer would be to encourage criminal conduct upon the part of both the employee and employer and serve to contaminate the honest administration of public affairs. . . ." (174 Cal.App.2d at pp. 188-189.)

---

attainment of a broad range of statutory objectives. (See, e.g., Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power* (1967) 67 Colum.L.Rev. 1404; Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute* (1976) 62 Va.L.Rev. 481; Ewing, *Sunlight in the Salt Mines* (1977) 29 Harv.L.Bull. 18; Note, *Implied Contract Right to Job Security* (1974) 26 Stan.L.Rev. 335; Comment, *A Common Law Action for the Abusively Discharged Employee* (1975) 26 Hastings L.J. 1435; Comment, *Protecting the Private Sector At Will Employee Who "Blows the Whistle": A Cause of Action Based Upon Determinants of Public Policy,* 1977 Wis.L.Rev. 777.)

Thus, *Petermann* held that even in the absence of an explicit statutory provision prohibiting the discharge of a worker on such grounds, fundamental principles of public policy and adherence to the objectives underlying the state's penal statutes require the recognition of a rule barring an employer from discharging an employee who has simply complied with his legal duty and has refused to commit an illegal act.[8]

As the statement of facts set out above demonstrates, the present case closely parallels *Petermann* in a number of essential respects. Here, as in *Petermann*, the complaint alleges that the defendant employer instructed its employee to engage in conduct constituting a criminal offense. Plaintiff, like the employee in *Petermann*, refused to violate the law and suffered discharge as a consequence of that refusal.

Arco concedes, as it must in light of *Petermann*, that the allegations of the complaint, if true, establish that defendants acted unlawfully in discharging plaintiff for refusing to participate in criminal activity.[9] Arco maintains, however, that plaintiff's remedy for such misconduct sounds only in contract and not in tort. Accordingly, Arco asserts that the trial court properly sustained its demurrer to plaintiff's tort causes of action, and correctly precluded plaintiff from recovering either compensatory tort damages or punitive damages.

In support of its contention that an action for wrongful discharge sounds only in contract and not in tort, Arco argues that because of the contractual nature of the employer-employee relationship, an injury which an employer inflicts upon its employee by the improper termination of such a relationship gives rise only to a breach of contract action. California decisions, however, have long recognized that a wrongful act committed in the course of a contractual relationship may afford both

---

[8]Although the *Petermann* court did not rely upon Labor Code section 2856, that statute provides additional support for the *Petermann* ruling. Section 2856 declares that "[a]n employee shall substantially comply with all the directions of his employer concerning the service on which he is engaged, *except where such obedience is* impossible or *unlawful....*" (Italics added.) While this statute does not specifically refer to an employer's authority to discharge an employee, the statute does reflect direct legislative approval of the basic proposition that an employer enjoys no authority to direct an employee to engage in unlawful conduct.

[9]Arco acknowledged at oral argument that the facts alleged in the complaint with respect to its dealings with its franchisees would, if true, amount to a violation of the antitrust laws.

tort and contractual relief, and in such circumstances the existence of the contractual relationship will not bar the injured party from pursuing redress in tort.

*Sloane v. Southern Cal. Ry. Co.* (1896) 111 Cal. 668 [44 P. 320] illustrates the early application of these principles. In *Sloane*, a passenger who had purchased a railroad ticket to San Diego and had been wrongfully ejected from the train before her destination sued the defendant railroad for damages in tort. In response, the railroad contended that the passenger's "only right of action is for breach of the defendant's contract to carry her to San Diego, and that the extent of her recovery therefor is the price paid for the second ticket, and a reasonable compensation for the loss of time sustained by her...." (111 Cal. at p. 676.)

The *Sloane* court rejected the defendant's contention, declaring that "[t]he plaintiff's right of action...is not...limited to the breach of [the] contract to carry her to San Diego, but includes full redress for the wrongs sustained by her by reason of the defendant's violation of the obligations which it assumed in entering into such a contract... [S]he could either bring an action simply for the breach of the contract, or she could sue...in tort for [defendant's] violation of the duty... which it assumed upon entering into such a contract." (111 Cal. at pp. 676-677.)

Numerous decisions decided in the 80 years since *Sloane* confirm that "'it [is] well established in this state that if the cause of action arises from a breach of a promise set forth in the contract, the action is ex contractu, *but if it arises from a breach of duty growing out of the contract it is ex delicto.*'" (Italics added.) (*Eads v. Marks* (1952) 39 Cal.2d 807, 811 [249 P.2d 257] (quoting *Peterson v. Sherman* (1945) 68 Cal.App.2d 706, 711 [157 P.2d 863]); see, e.g., *Jones v. Kelly* (1929) 208 Cal. 251, 254 [280 P. 942]; *Heyer v. Flaig* (1969) 70 Cal.2d 223, 227 [74 Cal.Rptr. 225, 449 P.2d 161]; *Distefano v. Hall* (1963) 218 Cal.App.2d 657, 678 [32 Cal.Rptr. 770].) In conformity with this principle, recent decisions have held that a month-to-month tenant who is wrongfully evicted for exercising the statutory "repair and deduct" remedy may maintain a tort action for compensatory and punitive damages against his landlord. (See, e.g., *Aweeka v. Bonds* (1971) 20 Cal.App.3d 278, 281 [97 Cal.Rptr. 650].)

In light of the foregoing authorities, we conclude that an employee's action for wrongful discharge is ex delicto and subjects an employer to tort liability. As the *Petermann* case indicates, an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied "'promise[s] set forth in the [employment] contract'" (*Eads v. Marks, supra,* 39 Cal.2d at p. 811), but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes. As such, a wrongful discharge suit exhibits the classic elements of a tort cause of action. As Professor Prosser has explained: "[Whereas] [c]ontract actions are created to protect the interest in having promises performed," "[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties...." (Prosser, Law of Torts (4th ed. 1971) p. 613.)

Past California wrongful discharge cases confirm the availability of a tort cause of action in circumstances similar to those of the instant case. In *Kouff v. Bethlehem-Alameda Shipyard* (1949) 90 Cal.App.2d 322 [202 P.2d 1059], for example, the court held that an employee who had been improperly discharged from his job for acting as an election poll official could maintain a tort cause of action against his employer for compensatory and punitive damages.[10] Similarly, in *Glenn v. Clearman's Golden Cock Inn, Inc., supra,* 192 Cal.App.2d 793, *Wetherton v. Growers Farm Labor Assn., supra,* 275 Cal.App.2d 168, 174-175 and *Montalvo v. Zamora, supra,* 7 Cal.App.3d 69, the courts sanctioned the right of employees, who had been discharged for joining unions or otherwise exercising their statutory right to choose a bargaining representative, to maintain tort causes of action against their employers for wrongful discharge.[11]

---

[10]Although Arco argues that a tort cause of action should not be permitted because the availability of punitive damages in such actions allegedly impairs the employer-employee relationship, *Kouff* demonstrates that under appropriate circumstances punitive damages may be warranted in this context. (See also *Montalvo v. Zamora, supra,* 7 Cal.App.3d 69, 77.) Indeed, our court has sanctioned the imposition of punitive damages in an employee's tort action against his employer in other contexts as well. (See, e.g., *Alcorn v. Anbro Engineering, Inc., supra,* 2 Cal.3d 493, 497, fn. 1.) Furthermore, Arco cites no instance in which tort liability has been denied in an entire class of cases on the ground that punitive damages would be available in aggravated circumstances.

[11]Contrary to the defendant's contention, the *Petermann* case in no way conflicts with the numerous California decisions sustaining a tort remedy for wrongful dis-

Although Arco attempts to distinguish these past wrongful discharge cases from the instant action on the ground that the discharges in the former cases were specifically barred by statute, the suggested distinction does not withstand analysis. In *Glenn, Wetherton* and *Montalvo*, as in *Petermann* and the instant case, no statute expressly prohibited an employer from discharging an employee on the stated ground; instead, the courts simply recognized that the general statute affording employees the right to join a union or choose a bargaining representative articulated a fundamental public policy which the employer's discharge clearly contravened. As the court observed in *Glenn*: "It would be a hollow protection indeed that would allow employees to organize and would then permit employers to discharge them for that very reason, unless such protection would afford to the employees the right to recover for this wrongful act." (192 Cal.App.2d at p. 798.)

Moreover, California courts have not been alone in recognizing the propriety of a tort remedy when an employer's discharge of an employee contravenes the dictates of public policy. In *Nees v. Hocks* (1975) 272 Ore. 210 [536 P.2d 512], for example, the Oregon Supreme Court upheld an employee's recovery of compensatory damages in tort for the emotional distress suffered when her employer discharged her for serving on a jury. Similarly, in *Harless v. First Nat. Bank in Fairmont* (1978) — W.Va. — [246 S.E.2d 270], the Supreme Court of West Virginia upheld a wrongful discharge action by a bank employee who was terminated for attempting to persuade his employer to comply with consumer protection laws, reasoning that "where the employer's motivation for [a] discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge," and concluding that the employee's cause of action "is one in tort and it therefore follows that rules relating to tort damages would be applicable." (*Id.*, at p. 275, fn. 5.)

---

charge. Although the employee in *Petermann* sought only back wages, a traditional contract remedy, nothing in that court's decision suggests that a wrongfully discharged employee may not maintain a tort action. Rather, after concluding that the allegations of the complaint in that case demonstrated the unlawfulness of the discharge, the *Petermann* court stated simply that the employee was "entitled to civil relief as a consequence thereof." (174 Cal.App.2d at p. 190.) Subsequent decisions, both in California and in other jurisdictions, have interpreted the *Petermann* decision as approving a tort cause of action in instances in which a discharge contravenes public policy. (See, e.g., *Glenn v. Clearman's Golden Cock Inn, Inc., supra,* 192 Cal.App.2d at pp. 796-797; *Fortune v. National Cash Register Co.* (1977) 373 Mass. 96 [364 N.E.2d 1251, 1256 & fn. 8].)

Indeed, the *Nees* and *Harless* decisions are merely illustrative of a rapidly growing number of cases throughout the country that in recent years have recognized a common law tort action for wrongful discharge in cases in which the termination contravenes public policy. (See, e.g., *Frampton* v. *Central Indiana Gas Co., supra*, 260 Ind. 249, [297 N.E. 2d 425, 63 A.L.R.3d 973]; *Kelsay* v. *Motorola, Inc.* (1979) 74 Ill.2d 172 [384 N.E.2d 353, 358, 370]; *Jackson* v. *Minidoka Irrigation Dist.* (1977) 98 Idaho 330 [563 P.2d 54, 57-58]; *Sventko* v. *Kroger Co.* (1976) 69 Mich.App. 644 [245 N.W.2d 151]; *Reuther* v. *Fowler & Williams* (1978) 255 Pa. Super. 28 [386 A.2d 119]; see also *Pierce* v. *Ortho Pharmaceutical Corp.* (1979) 166 N.J. Super. 335 [399 A.2d 1023, 1025-1026].)

These recent decisions demonstrate a continuing judicial recognition of the fact, enunciated by this court more than 35 years ago, that "[t]he days when a servant was practically the slave of his master have long since passed." (*Greene* v. *Hawaiian Dredging Co.* (1945) 26 Cal.2d 245, 251 [157 P.2d 367].) In the last half century the rights of employees have not only been proclaimed by a mass of legislation touching upon almost every aspect of the employer-employee relationship, but the courts have likewise evolved certain additional protections at common law. The courts have been sensitive to the need to protect the individual employee from discriminatory exclusion from the opportunity of employment whether it be by the all-powerful union or employer. (See *James* v. *Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900]; *Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592].) This development at common law shows that the employer is not so absolute a sovereign of the job that there are not limits to his prerogative. One such limit at least is the present case. The employer cannot condition employment upon required participation in unlawful conduct by the employee.

We hold that an employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests, and an employer may not coerce compliance with such unlawful directions by discharging an employee who refuses to follow such an order. An employer engaging in such conduct violates a basic duty imposed by law upon all employers, and thus an employee who has suffered damages as a result of such discharge may maintain a tort action for wrongful discharge against the employer.

Accordingly, we conclude that the trial court erred in sustaining the demurrer to plaintiff's tort action for wrongful discharge.[12]

The judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Bird, C. J., Mosk, J., Richardson, J., and Newman, J., concurred.

MANUEL, J.—I concur in the judgment.

In my view the cause of action here in question flows from a clear statutory source—i.e., the provisions of section 2856 of the Labor Code. (Cf. *Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 73-75 [86 Cal.Rptr. 401].) Accordingly, I see no reason to search further for it among the vague and ill-defined dictates of "fundamental public policy."

CLARK, J.—I dissent.

The role of this court does not include overseeing—then overruling —legislatively declared policy. (Cal. Const., art. III, § 3.) In the belief we know better the needs of society, we again substitute our policy judgment for that of the Legislature, not even attempting to act under constitutional or other than personal compulsion. (See *Gay Law Stu-*

---

[12]In light of our conclusion that plaintiff's complaint states a cause of action in tort under California's common law wrongful discharge doctrine, we believe it is unnecessary to determine whether a tort recovery would additionally be available under these circumstances on the theory that Arco's discharge constituted a breach of the implied-in-law covenant of good faith and fair dealing inherent in every contract. We do note in this regard, however, that authorities in other jurisdictions have on occasion found an employer's discharge of an at-will employee violative of the employer's "good faith and fair dealing" obligations (see *Fortune* v. *National Cash Register Co.* (1977) 373 Mass. 96 [364 N.E.2d 1251, 1257]; cf. *Monge* v. *Beebe Rubber Company* (1974) 114 N.H. 130 [316 A.2d 549, 62 A.L.R.3d 264]), and past California cases have held that a breach of this implied-at-law covenant sounds in tort as well as in contract. (See, e.g., *Comunale* v. *Traders General Ins. Co.* (1958) 50 Cal.2d 654, 663 [328 P.2d 198, 68 A.L.R.2d 883]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 432-433 [58 Cal. Rptr. 13, 426 P.2d 173]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032].) Since neither plaintiff nor defendants suggest that the elements of a cause of action for breach of the implied covenant in this context would differ from the elements of an ordinary wrongful discharge action, however, we believe that a separate discussion of the "good faith and fair dealing" covenant in this case is unnecessary.

In a similar vein, we think that the count of the complaint seeking recovery for intentional interference with contractual relations should not be viewed as stating a cause of action distinct from the wrongful discharge claim. (Cf. *Top Serv. Body Shop, Inc.* v. *Allstate Ins. Co.* (1978) 283 Ore. 201 [582 P.2d 1365, 1368-1371].)

*dents Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, dis. opn. at p. 501 [156 Cal.Rptr. 14, 595 P.2d 592]; *People* v. *Drew* (1978) 22 Cal.3d 333, dis. opn. at p. 361 [149 Cal.Rptr. 275, 583 P.2d 1318]; *Marvin* v. *Marvin* (1976) 18 Cal.3d 660, dis. opn. at pp. 686-687 [134 Cal.Rptr. 815, 557 P.2d 106]; *Li* v. *Yellow Cab. Co.* (1975) 13 Cal.3d 804, dis. opn. at pp. 832-833 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

The legislative policy at issue in this case is declared in Labor Code section 2922 providing that employment without particular term may be terminated *at will* by either employee or employer. (*Ante,* p. 172, fn. 6.) The Legislature went on to declare limited exceptions to the right of an employer to terminate an employment relationship. An employee may proceed in tort if dismissed because of absence from work to fulfill an obligation as an election officer (see Elec. Code, § 1655; *Kouff* v. *Bethlehem-Alameda Shipyard* (1949) 90 Cal.App.2d 322 [202 P.2d 1059]), or because of participation in labor activities encouraged and authorized by the Legislature (see Lab. Code, § 923; *Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69 [86 Cal.Rptr. 401]; *Wetherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168 [79 Cal.Rptr. 543]; *Glenn* v. *Clearman's Golden Cock Inn, Inc.* (1961) 192 Cal. App.2d 793 [13 Cal.Rptr. 769]; see also, *Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444 [129 Cal.Rptr. 216]). These are legislatively created exceptions giving rise to causes of action in tort. The majority improperly rely on such legislative exceptions to justify their own new exception. We err because the Legislature, by stating the general rule and *expressly* making exceptions thereto, must be deemed to intend no other exception for now. This court should—as others will—recognize not only a lack of legislative authorization for our new cause of action, but also recognize a legislative intent to reject such cause of action.

The California cases on which the majority rely either fall within the legislatively declared exceptions or are substantively distinguishable. The majority attempt to rely on *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25], noting "the present case closely parallels *Petermann* in a number of essential respects." (*Ante,* p. 174.) It doesn't work. *Petermann* holds only that the alleged discharge of an employee for refusal to commit perjury constitutes a breach of contract; the case doesn't hint of tort liability. *Petermann* at most stands for the proposition that termination even for

reasons contrary to public policy may result in contractual damages alone.

The majority also attempt to rely on cases wherein the negligent or intentional breach of a duty arising out of contract constitutes grounds for action in tort, as in the case of wrongful ejection of a ticketed passenger by a railway company. (*Sloane* v. *Southern Cal. Ry. Co.* (1896) 111 Cal. 668 [44 P. 320]; see also *Heyer* v. *Flaig* (1969) 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161]; *Eads* v. *Marks* (1952) 39 Cal.2d 807 [249 P.2d 257]; *Jones* v. *Kelly* (1929) 208 Cal. 251 [280 P. 942]; *Distefano* v. *Hall* (1963) 218 Cal.App.2d 657 [32 Cal.Rptr. 770].) There is no question that as a matter of general law a duty originating in contract, as well as a duty owing generally to all persons, may be breached in a manner giving rise to an action ex delicto. However, this does not mean every breach of a contractual duty is delictual.

The cases relied on by the majority wherein causes of action ex delicto arise out of breach of contractual duty are clearly distinguishable. The actionable conduct in each case constituted both contractual and tortious breaches, whereas in the instant case the breach—if termination of a no-term employment contract is a breach (see *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184) —is contractual only. Thus in *Sloane* the breach consisted in unlawfully ejecting the ticketed passenger from a train on which she had contracted to travel. (*Sloane* v. *Southern Cal. Ry. Co., supra,* 111 Cal. 668, 676-677.) In *Heyer* the breach consisted of the negligent failure of an attorney to provide proper testamentary provisions in a will, as he had contracted to do. (*Heyer* v. *Flaig, supra,* 70 Cal.2d 223, 229.) In *Eads* the breach consisted of the negligent failure to place a glass container of milk beyond the reach of a child in violation of an agreement to place the container in a safe place. (*Eads* v. *Marks, supra,* 39 Cal.2d 807, 812.) In *Jones* the breach consisted of the tortious termination of a water supply by a landlord who had contracted to provide water. (*Jones* v. *Kelly, supra,* 208 Cal. 251, 255.) In *Distefano* the breach consisted of the negligent failure of a contractor to supervise construction he had contracted to supervise. (*Distefano* v. *Hall, supra,* 218 Cal.App.2d 657, 676, 678.) The majority further rely on *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278 [97 Cal.Rptr. 650], but in that case a cause of action for unlawful eviction was held to lie because the eviction was found retaliatory for the tenant's assertion of a *statutory* right, and the right to such an action was deemed statutorily authorized. (See Civ. Code, §§ 1941, 1942.)

In the instant case the alleged actionable conduct is only contractual, that is, the alleged wrongful termination of an employment contract. In terminating that contract defendant did not *also* breach a duty giving rise to a cause of action in tort. (See *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184.) As in *Petermann* there is no delictual breach in the termination itself,[1] although it is alleged that defendants' *reason* for the termination—plaintiff's refusal to cooperate with defendants in committing acts contrary to public policy —was improper. There does not exist in the instant case, as there does in the *Sloane, Heyer, Eads, Jones, Distefano* and similar cases, the least connection between defendants' actionable conduct (breach of contract) and *any* tort. The alleged wrongs—solicitations to violate or to conspire to violate the Cartwright and other acts—constitute no element of the termination as, according to the Legislature, an employer needs no reason to terminate. In the *Sloane* group of cases, where the contractual breach itself constitutes a tortious breach, the wronged party can elect his remedy, whereas here the alleged unlawful termination of employment gives rise to only a cause of action for breach of contract. If defendants are independently guilty of Cartwright Act violations, independent proceedings may be taken against them.

Other decisive reasons clearly show why the *Sloane* group of cases is improperly applied in this case by the majority. None deals with breach of an employment contract, and none involves as here a statutory scheme declaring legislative intent.

The majority's further reliance on decisions in sister states totally without reference to governing statutory schemes (*ante,* p. 177), and our court's declaration that we are "sensitive to the need to protect the individual employee from discriminatory exclusion from the opportunity of employment whether it be by the all-powerful union or employer" (*ante,* p. 178), reveals a rank insensitivity to our judicial role. Today's

---

[1] In his "First Cause of Action (Tort of Wrongful Discharge)" plaintiff alleges defendants "maliciously, without just cause or excuse, and with wilful intent to injure plaintiff, conspired to bring about plaintiff's disgrace, humiliation, and ruin, and to cause and to carry out plaintiff's discharge from his employment, and to deprive plaintiff of his right to employment with Arco, by falsely accusing plaintiff of incompetence in his work and by ultimately causing and bringing about his discharge from his employment." Although couched in language of oppression, no tortious act sufficient to withstand demurrer is alleged beyond the conclusionary claim of a new and novel "Tort of Wrongful Discharge."

court judgment is a legislative judgment better left to the Legislature where, properly, public policy is declared. The Legislature has spoken; if the system is to work, the Legislature will redeclare its position.

The judgment of the trial court should be affirmed.

Appellant's petition for a rehearing was denied July 2, 1980. Clark, J., was of the opinion that the petition should be granted.