**JACK ROWE ASSOCIATES, INC. et al., Plaintiffs,**

v.

**FISHER CORPORATION, Defendant.**

**No. CV 84–9898 WJR.**

United States District Court, C.D. California.

July 2, 1986.

John G. Clancy, c/o Jack Rowe Associates, Durengo, Colo., for plaintiffs.

Donald F. Woods, Amy D. Hogue, Lillick McHose & Charles, Los Angeles, Cal., for defendant.

### ORDER GRANTING SUMMARY JUDGMENT

REA, District Judge.

The matter of defendant's Motion for Summary Judgment having come on regularly for hearing, the Court having considered the papers filed in support and in opposition thereto, the relevant legal authorities and the oral arguments of counsel,

IT IS HEREBY ORDERED that the Motion is GRANTED. The Court finds that there are no genuine issues of fact that would entitle plaintiff to relief on any of the three counts in the Third Amended Complaint. This Order is based on the following Memorandum of Decision.

IT IS FURTHER ORDERED that Judgment be ENTERED in favor of defendant FISHER CORPORATION and against plaintiffs.

## MEMORANDUM OF DECISION

### STATEMENT OF FACTS

Jack Rowe is the president of two companies, plaintiffs herein: JACK ROWE ASSOCIATES (hereinafter ASSOCIATES) and ROWE MARKETING INTERNATIONAL (hereinafter INTERNATIONAL). ASSOCIATES was a party to a written Sales Representative Agreement with FISHER CORPORATION. (Exhibit A to defendant's Motion for Summary Judgment.) INTERNATIONAL was a party to an oral Distributorship agreement. The agreements provided for Jack Rowe's companies to sell FISHER products in certain territories. ASSOCIATES was a FISHER Sales Representative in Mexico and the border areas in the United States, also representing products of other companies. INTERNATIONAL was a distributor in Mexico.

As a Sales Representative, ASSOCIATES sought purchasers of FISHER's stereo equipment in its territory. As a distributor, INTERNATIONAL bought equipment to resell it to retailers in Mexico. ASSOCIATES was paid on a commission basis, with rebates at the end of the year based on volume of sales. Many of ASSOCIATES' customers in Mexico ordered their merchandise on credit with the FISHER CORP. INTERNATIONAL purchased its equipment pursuant to a credit line it maintained with FISHER. These financial credit arrangements changed dramatically when Mexico devalued its peso in 1982. FISHER withdrew its extensions of credit to retailers in Mexico and to INTERNATIONAL, and warned Jack Rowe of the impending devaluations of currency in Mexico.

Rowe decided to speculate that the currency situation would not be harmful, and he extended credit on his own to his customers, both for ASSOCIATES and for INTERNATIONAL. This put him in a position of having to pay FISHER for its equipment before collecting from his buyers. When the peso was devalued twice in 1982, his companies were in a bad financial position, having advanced equipment to Mexican customers who could not pay for it.

Jack Rowe went to FISHER in September, 1982, to discuss the harsh situation. Reportedly, at that meeting, a FISHER employee told Rowe that he would probably make up those losses in future sales of FISHER equipment.

In December, 1982, FISHER sent a letter to ASSOCIATES terminating their contract upon 30 days written notice, without cause. (Exhibit D to Defendant's Motion for Summary Judgment.) In April, 1983, INTERNATIONAL sent a letter to FISHER stating that INTERNATIONAL was forced to terminate its business, on account of many factors, including Jack Rowe's divorce and FISHER's refusal to fill INTERNATIONAL's orders for equipment. (Exhibit C to defendant's Motion for Summary Judgment.) The contract between ASSOCIATES and FISHER provided for termination at will upon 30 days written notice by either party. (Exhibit A to defendant's Motion for Summary Judgment, ¶ 12.) As for termination of the oral contract, no termination clause was discussed by the parties at the time the agreement was made.

In this lawsuit, Jack Rowe maintains that FISHER breached its contracts with his companies, and that it terminated his companies in breach of the implied covenant of good faith and fair dealing. However, none of these theories is supported by the uncontroverted facts in the record.

### CONCLUSIONS OF LAW

Count 1 of the Third Amended Complaint alleges that the contracts between FISHER and Jack Rowe's companies, one written and one oral, were modified after the peso devaluation. Rowe claims that a FISHER employee promised Jack Rowe that if he would bear the loss engendered by the peso devaluation, FISHER would employ his services until he had made up those losses in future sales. This supposed oral modification is invalid for two reasons. First, no new consideration passed from Rowe's companies to FISHER to make the new promise enforceable. Second, the evidence

does not establish that an unequivocal promise was ever made.

■ Rowe's companies had already borne the losses engendered by the peso devaluation. Because of Rowe's decision to speculate, his companies had extended bad credit to Mexican buyers, who could not pay their debts. These losses were incurred at the time of the peso devaluation, not afterwards. Rowe claims that he could have sold the merchandise in the United States, despite the fact that his territory was limited by contract, and the merchandise was not UL listed and could not be sold in many states. Rowe also claims that he would not have sold the merchandise in Mexico, had he known that his losses would not be made up by FISHER. Yet he had no choice but to sell in his territory, and any other new territory that FISHER might find for him. Finally, Rowe claims he could have pursued harsher collection techniques against his Mexican clients, but the evidence is that these collection techniques would have only resulted in Rowe's losing more money in vain attempts to collect bad debts.

Rowe claims that he forebore filing a lawsuit to force FISHER to take back its merchandise from INTERNATIONAL. He claims that an attorney in El Paso told him he had a viable legal cause of action. This is not enough to withstand summary judgment. Rowe does not establish for the Court what that claim would have been, and its existence is contrary to a written document from FISHER accompanying its stereo equipment, which states that no transaction will be undone without prior written authorization. Rowe does not submit any evidence that he had such prior written authorization. There is no basis for the Court to hold that he had a valid cause of action against FISHER forebearance from which could be consideration for FISHER's alleged promise.

■ The facts also do not establish that an unequivocal promise was ever made by a FISHER person. The most that plaintiff has shown is that someone at FISHER told him that he might be able to make up his losses in future sales. This was more a hopeful statement to encourage him than it was a promise to employ his companies indefinitely.

■ Count 2 of the Third Amended Complaint alleges bad faith termination. Although the complaint does not allege facts to support this theory, plaintiff's opposition to the instant motion implies that FISHER terminated Jack Rowe's companies because it was bribed to do so by the persons who succeeded to Rowe's territories. Even if this contention were true, plaintiff cites no case which establishes a cause of action for this type of conduct. Plaintiff merely relies upon *Tameny v. Atlantic Richfield Co.*, (1980) 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330, which held something entirely different. *Tameny* held that an employee-at-will may not be terminated for refusal to perform an illegal act. There is no proof that the purported "bribe" was illegal or against public policy, and in any event, Jack Rowe was not an employee of FISHER. The *Tameny* public policy exception to the doctrine of employment at will does not apply to the instant case.

■ Count 3 of the Third Amended Complaint alleges that FISHER breached its contracts with plaintiffs by terminating them without good cause. Plaintiff contends that both the contracts with his companies contained oral terms for termination only for good cause. Rowe declares in support of his opposition to the instant motion that he was told at the time he entered into the agreements for his companies that he would be a member of the "family" in the Japanese business tradition, and would be terminated only for poor performance, after notification by FISHER and after FISHER had helped him try to correct his performance.

These oral terms cannot be enforced because they are barred by the parol evidence rule, being contradictory of the alleged contracts themselves. In addition, plaintiff's deposition testimony states that these oral terms were never discussed, and plaintiff

cannot escape summary judgment by contradicting his prior sworn testimony.

Both contracts were by their terms terminable at will. The written contract between ASSOCIATES and FISHER specifically states, in paragraph 12 of Exhibit A to the Motion, that it is terminable at will by either party upon 30 days written notice. The uncontroverted facts establish that FISHER terminated the contract in exactly this fashion, by letter on 30 days notice. Therefore, there was no breach of the written Sales Representative Agreement by the termination.

The oral agreement between INTERNATIONAL and FISHER was evidenced by a letter from FISHER confirming the existence of the distributorship. (Exhibit B to defendants Motion for Summary Judgment.) Jack Rowe testified in his deposition that at the time the oral contract was entered into, no discussions of the grounds for terminating the contract were mentioned by either party. In a distributorship agreement, when termination for good cause is not a term in the agreement, the agreement is presumed to be terminable at will by either party. *Kolling v. Dow Jones & Co.*, (1982) 137 Cal.App.3d 709, 187 Cal.Rptr. 797. Further, the letter confirming the agreement specifically states that the distributorship is terminable at will by either party upon 30 days written notice. Finally, it was INTERNATIONAL, not FISHER, that terminated the contract in writing on 30 days notice.

Because the Court finds that there are no uncontroverted facts that would entitle plaintiff to relief on his legal theories, the Court grants the requested summary judgment for defendants.