**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ARNOLD NANCE, an individual,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>TIME WARNER CABLE, INC., a<br>corporation or other form of legal entity,<br><br>        Defendant - Appellee. | No. 09-56912<br><br>D.C. No. 2:08-cv-07340-R-FFM<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted May 3, 2011
Pasadena, California

Before: SILVERMAN, TALLMAN, and CLIFTON, Circuit Judges.

Arnold Nance appeals from the summary judgment granted by the district

court in favor of Time Warner Cable. We affirm.

Nance's complaint alleges a violation of California tort law under *Tamney v.*

*Atlantic Richfield Co.*, 610 P.2d 1330 (Cal. 1980), which recognized the tort of

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

wrongful termination in violation of public policy. Under California law, the first step in analyzing a *Tamney* claim is to determine whether the former employee was "engaged in a protected activity." *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1109 (Cal. Ct. App. 2007).

Nance contends he was engaged in protected activity because he brought to light accounting misstatements and SEC violations in TWC's financial reports. Therefore, he argues, his conduct is a protected activity under the whistleblower protection provision of the Sarbanes-Oxley Act (SOX). *See Stevenson v. Superior Court*, 941 P.2d 1157, 1161 (Cal. 1997) (protected activity must be based on "either constitutional or statutory provisions").

Under § 1514A of SOX an employee cannot be terminated for providing information "regarding any conduct which the employee reasonably believes constitutes a violation of [a federal fraud statute], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders." 18 U.S.C. § 1514A(a)(1). In order to be protected by the anti-retaliatory provision an "employee's communications must 'definitively and specifically' relate to one of the listed categories of fraud or securities violations" in § 1514A. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996–97 (9th Cir. 2009) (quoting *Platone v. FLYi, Inc.*, 25 IER Cases 278, 287 (Dep't of

2

Labor Sept. 29, 2006).  Additionally, the employee must have "a subjective belief that the conduct being reported violated a listed law" and "this belief must be objectively reasonable."  *Van Asdale*, 577 F.3d at 1000.  Nance has failed to meet any of these requirements.

The issue about which Nance communicated with his superiors, possible errors in Comcast's subscriber count, did not relate to one of the listed categories of fraud or securities violations, let alone definitively and specifically.  Nance told his superiors about an inconsistency between the way Comcast and TWC calculated their subscriber counts prior to the purchase of Comcast by TWC.  None of Nance's statements linked the inconsistency to fraud or to a securities violation.  Nance was not required to use the word "fraud" or to cite the code section he believed was violated, *see id.* at 997, but his statements must still be related to fraudulent or otherwise illegal conduct in order to be protected.

Nor did he suggest that TWC was violating SEC regulations by not reporting the problem.  In his e-mail informing his superior of the exceptions he intended to make, Nance identified one of the other exceptions as a possible SOX violation but made no similar statement about the subscriber count issue.  Even when Nance suggested to another TWC official that the information should be disclosed, his

3

reason was that it "impacts other partners in the partnership," not that failure to disclose it would be a securities violation.

Nance's statements about the subscriber count inconsistency also demonstrate that, at the time, he did not have a subjective belief that TWC was engaging in fraudulent or illegal activities. Additionally, Nance signed representation letters every quarter and made no mention of the problem in any of the representation letters he signed between January of 2007, when he first raised the issue orally to Feldstein, and the December 2007 representation letter. Moreover, in the same December 2007 representation letter in which he finally did raise the issue, he also certified that he did not believe that there had been any fraudulent activity in regards to TWC's financial statements. While this provision was part of the boilerplate language of the letter, so were the other provisions to which Nance made his exceptions.

Finally, Nance's purported belief that TWC had engaged in fraudulent or illegal activities would not have been objectively reasonable. In order to have an objectively reasonable belief, "the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud." *Van Asdale*, 577 F.3d at 1001. Nance's theory of fraud was deficient in several key ways. Notably, it was missing the element of materiality because the alleged

4

problems, according to Nance, had a financial impact of an amount which TWC's outside auditor, when referred the question by TWC management, concluded was immaterial to a corporation the size of TWC. Nance's theory was also missing any ground to support or infer scienter.

As Nance was not engaged in a protected activity, a necessary element to his claim, summary judgment was appropriate.

**AFFIRMED.**

5