**WORLD OF SLEEP, INC.,
Plaintiff-Appellant,**

v.

**The STEARNS & FOSTER COMPANY,
Defendant-Appellee.**

**No. 74–1730.**

United States Court of Appeals,
Tenth Circuit.

Argued May 21, 1975.

Decided Oct. 30, 1975.

Lyle E. Strom, Omaha, Neb. (C. L. Robinson, Fitzgerald, Brown, Leahy, Strom, Schoor & Barmettler, Omaha, Neb., and Gorsuch, Kirgis, Campbell, Walker & Grover, Denver, Colo., on the brief), for plaintiff-appellant.

William C. McClearn, Denver, Colo. (David G. Palmer, Denver, Colo., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

World of Sleep, Inc., a Colorado corporation, brought a civil antitrust action under 15 U.S.C. §§ 1 and 15 against Stearns & Foster Company, an Ohio corporation. Stearns is a manufacturer of bedding products and its manufacturing plant is located outside Cincinnati, Ohio. World of Sleep is a retailer of specialty bedding products and has headquarters in Denver, Colorado, from which location it serves much of the Rocky Mountain area. From 1965 till 1969 Stearns sold its bedding products to World of Sleep, which in turn sold such items at retail to its customers in the Rocky Mountain area. In December 1969 a dispute arose between the parties and as a result Stearns discontinued selling to World of Sleep. In May 1970 World of Sleep instituted the present antitrust proceeding.

The gist of the complaint is that Stearns violated section 1 of the Sherman Act in two particulars: (1) By requiring World of Sleep to maintain the retail prices at which it sold at retail Stearns' bedding products; and (2) by imposing territorial restrictions upon World of Sleep's resale of Stearns' products. Trial was to a jury and at the conclusion of the evidence the trial court, without objection, withdrew from the jury that portion of the complaint charging price fixing. The issue as to whether Stearns had imposed territorial limitations on World of Sleep in its resale of Stearns' products in violation of section 1 of the Act was submitted to the jury. The jury returned a verdict in favor of Stearns, and World of Sleep now appeals the judgment entered thereon. Brief review of the background facts will place this matter in context.

World of Sleep was formed in 1965 and opened a retail bedding store in Denver. In that same year World of Sleep entered into a business relationship with Stearns, although there apparently never was any formal agreement or contract between the two companies. In any event, in 1965 Stearns commenced selling bedding products to World of Sleep. All sales were on open account with the freight to Denver paid by Stearns. Title to the bedding products passed from Stearns to World of Sleep upon delivery in Denver.

As indicated, there was no formal contract between the parties, though Stearns nonetheless continued to sell its products to World of Sleep from 1965 to December 1969, at which time Stearns terminated the relationship. It is agreed that during this four-year period of time World of Sleep was free to stop buying from Stearns at any time and, conversely, Stearns had no contractual commitment to continue to sell to World of Sleep. At all times World of Sleep was at liberty to purchase from other bedding suppliers, and it routinely did so, carrying virtually all nationally known brands. It was also agreed that there was no understanding that World of Sleep would be the exclusive dealer for Stearns' products in the Denver area, nor was there any agreement or understanding, as such, that World of Sleep was limited to a particular geographical area in which it could retail Stearns' products.

Although there was some testimony from Stearns' officials indicating at least a degree of dissatisfaction with World of Sleep starting as early as the summer of 1968, there is no doubt that the matter only came to a head in December 1969 when Stearns first learned that World of Sleep was transshipping goods it had purchased from Stearns to its sister store in Atlanta, Georgia. This is the real nub of the present dispute, and the facts should be developed a bit.

Stearns did have two or more accounts in some major cities, such as in Detroit, Pittsburgh, St. Louis, Baltimore, and Nashville, for example. At the same time in other areas, and no doubt under different circumstances, Stearns admittedly had a policy of having only one dealer in a given locality. For example, in the Atlanta, Georgia, area Stearns

had long dealt with Rich's department store. As was the case with World of Sleep, Stearns had no dealership agreement with Rich's, and Stearns was free to establish other accounts in Atlanta, if it chose to do so, though it had never done so.

In 1968 the owners of World of Sleep decided to expand their operations to Atlanta, Georgia. A new World of Sleep corporation was formed in Georgia, and a retail store was opened in Atlanta. From time to time during 1968 the officers of the Colorado based World of Sleep requested Stearns to sell to the Georgia based World of Sleep. Stearns declined to thus sell, citing its loyalty to Rich's. Then in December 1969 Stearns learned that the Colorado based World of Sleep had shipped from Denver goods which it had received from Stearns to its sister store in Atlanta. This meant that World of Sleep in Atlanta had Stearns' bedding products for sale at retail and thus would be competing with Rich's department store. When Stearns learned of this transshipping of its bedding products from Denver to Atlanta, protest was made, but to no avail. It was in this setting that Stearns terminated its relationship with World of Sleep and stopped selling bedding products to World of Sleep. The present antitrust action was instituted a few months later.

The main point raised on appeal is whether the trial court erred in denying World of Sleep's motion for a directed verdict on the issue of liability. At the conclusion of all the evidence World of Sleep moved for a directed verdict in its favor as to liability, with the jury determining only the *amount* of damages. In this regard World of Sleep contends that the undisputed evidence showed that Stearns did impose a territorial restriction on World of Sleep in its resale of Stearns' bedding products, and that such restriction was demonstrated by the fact that Stearns discontinued selling to World of Sleep upon learning that World of Sleep had been transshipping Stearns' products to its sister store in Atlanta, Georgia. World of Sleep further argues that the evidence established as a matter of law that World of Sleep as a result of Stearns' antitrust violation had sustained injury and resultant damage. It is on such reasoning that World of Sleep contends that the trial court should have directed a verdict on liability, and only submitted to the jury the one issue as to the extent of the damages sustained by it. We do not agree with this analysis of the matter.

■ In the first place, the question as to whether World of Sleep sustained *any* damages as the result of Stearns' actions was in our view very much in dispute. The World of Sleep was a profitable venture and from the date of its incorporation in 1965 clear up until the time of trial its sales and net worth were on a steady rise. On appeal World of Sleep relies primarily on damages arising as a result of what it claims were increased advertising costs necessitated by Stearns' determination to discontinue selling to it. In this regard it was World of Sleep's theory that when Stearns terminated its business relationship with World of Sleep it became necessary for it to increase its advertising of its other lines of bedding. The record shows that World of Sleep's advertising costs, like its sales and net worth, increased each year, but whether such increase in advertising costs could be attributed to Stearns' discontinuance of selling to World of Sleep is certainly debatable. Without reviewing the evidence relating to damage, we are of the view that the evidence as to the *fact* of damage is such as to present a jury question as to whether World of Sleep did in fact sustain any damage. Certainly the state of the record is such as to permit conflicting inferences on the matter. On this ground alone the trial court was justified in denying World of Sleep's motion for a directed verdict on the issue of liability. It is well established that an essential element for recovery under antitrust laws is that the claimant be injured or damaged, and a violation of the Act without resultant injury is not enough. *See Gray v. Shell*

*Oil Company,* 469 F.2d 742 (9th Cir. 1972), *cert. denied,* 412 U.S. 943, 93 S.Ct. 2773, 37 L.Ed.2d 403 (1972); *Nationwide Auto Appraiser Serv. v. Association of C. & S. Co.,* 382 F.2d 925 (10th Cir. 1967); and *Winckler & Smith Citrus Products Co. v. Sunkist Growers, Inc.,* 346 F.2d 1012 (9th Cir. 1965).[1]

As a corollary of its directed verdict argument, World of Sleep alternatively argues that if the trial court acted properly in denying the motion for directed verdict, under the circumstances the trial court, at the very least, should have instructed the jury that Stearns, as a matter of law, had imposed territorial limitations on World of Sleep in connection with the latter's resale of Stearns' products in violation of section one of the Sherman Act. We disagree, and believe that the matter was properly submitted to the jury under instructions which were in substantial accord with *United States v. Arnold, Schwinn & Co.,* 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).

The *Schwinn* case played a dominant role in the trial of the instant case, and the trial judge attempted to tailor his instructions to fit the teaching of that case. In *Schwinn,* it was held that where a manufacturer, such as Stearns in the instant case, *sells* his product to a distributor, such as World of Sleep, and in connection with such sale "firmly and resolutely" subjects the distributor to territorial restrictions upon resale, whether by "explicit agreement or silent combination or understanding with his vendee," a *per se* violation of the Sher-

man Act results.[2] In an effort to square his instructions with *Schwinn,* the trial judge instructed the jury as follows:

However, under the Sherman Act, it is unreasonable without more for a manufacturer to seek to restrict and confine areas or persons with whom an article may be traded after the manufacturer has parted with dominion over it. Once the manufacturer has parted with title and risk, he has parted with dominion over the products and his efforts thereafter to restrict territory or persons to whom the product may be transferred, whether by explicit agreement or by silent combination or understanding with his vendee, is a violation of Section 1 of the Sherman Act. Therefore, if you find from a preponderance of the evidence that the defendant imposed a condition on its sales to the plaintiff, that the mattresses purchased by the plaintiff could not be resold by it wherever and to whomever it chose, and that the defendant firmly and resolutely imposed that restriction on resale, then you will find that the defendant violated the antitrust law.

■ In sum, then, we believe the trial court acted properly in submitting to the jury the question as to whether Stearns violated the Sherman Act and whether World of Sleep sustained injury as a result of any such violation. Like the trial court, we fail to see how the fact, if it be a fact, that Stearns discontinued selling to World of Sleep because the latter transshipped goods to its sister store in Atlanta necessarily established

1. Footnote 1 in *Sunkist* reads as follows:

"Since the statute [15 U.S.C. § 15 (1958)] which gives the private litigant the right to sue imposes the basic requirement that there be injury to the plaintiff's business or property, it has been held repeatedly that the gist of the action is legal injury—not mere violation of the statute. The damage for which recovery may be had in a civil action must be proximately related to the conspiracy; recovery for a statutory violation is not based on the conspiracy itself but on injury to the plaintiff produced by specific overt acts pursuant to the conspiracy. The 'mere existence of a violation

is not sufficient ipso facto to support the action' and a 'private person has no right to complain of a violation of § 1 or § 2 as such, nor does such a violation per se give a private cause of action.'" Timberlake, Legal Injury Requirements and Proof of Damages in Treble Damage Actions Under the Antitrust Laws, 30 Geo.Wash.L.Rev. 231, 232 (1961).

2. For a recent Tenth Circuit analysis of *Schwinn, see Colorado Pump & Supply Co. v. Febco, Inc.,* 472 F.2d 637 (10th Cir. 1973), *cert. denied,* 411 U.S. 987, 93 S.Ct. 2274, 36 L.Ed.2d 965.

that Stearns had previously imposed territorial limitations upon World of Sleep's resale of Stearns' products. Such in our view was still a jury question.

■ *Schwinn* also stands for the proposition that where a manufacturer does not sell his product to a dealer, but on the contrary retains title, dominion and risk with respect to the product, and the position of the dealer is akin to that of an agent or salesman of the manufacturer, a territorial limitation on such type of a dealer is violative of the Sherman Act only if the impact of such limitation is "unreasonably" restrictive of competition. Since World of Sleep was relying on a *per se* violation of the Sherman Act under the rule of *Schwinn,* World of Sleep argues that the jury should have been instructed that the so-called "rule of reason" based on business justification was not a defense to a *per se* violation. It is agreed that the "rule of reason" plays no role in a proceeding based on a *per se* violation of the Sherman Act. *United States v. Topco Associates,* 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972). However, though both parties fully explored Stearns' business practices, in our view the "rule of reason" issue was never really in the case, and hence no instruction on the matter was necessary. Moreover, there is a limit as to how many instructions a trial court must give a jury in a private antitrust proceeding such as the instant one. The trial court in affirmative fashion did instruct the jury, in effect, as to just what constituted a *per se* violation of the Sherman Act. Such is enough, and the trial court need not instruct the jury as to all of the things it should *not* consider in determining whether there has been a violation of the Sherman Act. Again, we feel the jury was adequately instructed on what constituted a violation of the Sherman Act.

■ The other matters raised on appeal are relatively minor in nature, and do not merit much comment. For example, World of Sleep contends that the testimony of one Darrell M. Reed, a witness for Stearns, was "grossly mislead-

ing" and should not have been permitted to go to the jury. Reed was qualified as a certified public accountant and he examined the books of World of Sleep. His testimony had bearing on the question as to the damages, if any, sustained by World of Sleep. The jury was adequately instructed in the manner in which it could consider the testimony of an expert, and we find no error in this regard.

■ An officer of World of Sleep testified as to certain telephone conversations he had with Mr. Thomas Bell, the president of Stearns. Unbeknownst to Mr. Bell, on certain of these occasions another officer of World of Sleep listened in on an extension, and on other occasions the conversation was taped without Mr. Bell's knowledge. These taped conversations were offered into evidence upon trial by World of Sleep, and, over Stearns' objections, were received into evidence. World of Sleep later tendered an instruction to the effect that it was not "unlawful or improper" for World of Sleep to tape the telephone conversations it had with Mr. Bell, regardless of whether Mr. Bell permitted or had knowledge of such taping. The trial court denied such requested instruction. We find no error. A trial court cannot instruct a jury on everything. Whether such taping was "improper" is a matter upon which there might well be a difference of opinion. Whether such taping might be "unlawful" was never fully developed, either in the trial court, or here. In any event, there was no error in refusing to give the tendered instruction.

One final matter deserves brief comment. Stearns in its answer set forth a counterclaim in which it sought a declaratory judgment to the effect that it "has the right to refuse to sell its products to the plaintiff without liability under the antitrust laws or otherwise." At trial it was agreed by the parties that the counterclaim would not be submitted to the jury. After the jury's verdict, Stearns sought to withdraw its counterclaim, which motion was objected to by World

46

of Sleep. The trial court ruled that at that stage of the proceedings the motion to withdraw could only be granted if stipulated and agreed to by World of Sleep, and accordingly denied the motion to withdraw the counterclaim. Fed.R. Civ.P. 41. In this posture the trial court declined to act further on the counterclaim, asserting that "the declaratory relief requested in the * * * counterclaim has been provided by the instructions given the jury herein and no further proceedings or orders are required." Having declined to grant the relief prayed for in the counterclaim, we deem such to be in effect a dismissal of the counterclaim. Upon remand of this matter the trial court, in order to clear up any doubt on this matter, shall dismiss the counterclaim. Otherwise, the judgment as entered is Affirmed.