CENTRAL NATIONAL BANK, Poteau, Oklahoma, a National Bank, F.L. Holton, in his official and individual capacities, and Tommy Miller, in his official and individual capacities, Plaintiffs-Appellants,

v.

H.E. RAINBOLT, an individual, Neal H. Sims, an individual, Ronald A. Sims, an individual, Charles D. Saviers, co-trustee of the C.B. Saviers Testamentary Trust, and Boyd M. Saviers, co-trustee of the C.B. Saviers Testamentary Trust, Defendants-Appellees.

CENTRAL NATIONAL BANK, Poteau, Oklahoma, a National Bank, F.L. Holton, in his official and individual capacities, Plaintiffs-Appellants,

v.

H.E. RAINBOLT, an individual, Neal H. Sims, an individual, Ronald A. Sims, an individual, Charles D. Saviers, co-trustee of the C.B. Saviers Testamentary Trust, and Boyd M. Saviers, co-trustee of the C.B. Saviers Testamentary Trust, Defendants-Appellees.

Nos. 81–2262, 82–1227.

United States Court of Appeals,
Tenth Circuit.

Nov. 9, 1983.

Richard F. Campbell, III of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl. (James D. Fellers and John Joseph Snider of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, Okl. and James E. Hamilton of Hamilton & Warren, Poteau, Okl., with him on brief), for plaintiffs-appellants.

Robert D. Nelon of Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for defendants-appellees.

Before SETH, Chief Judge, McWILLIAMS, Circuit Judge, and KERR, District Judge *.

SETH, Chief Judge.

This is a consolidated appeal from the trial court's order denying the plaintiffs' motion for a preliminary injunction and granting the defendants' motion for summary judgment. The suit arises from the attempt of the plaintiffs Central National Bank (CNB) and the Chairman of its Board of Directors, Mr. Holton, to block the takeover of CNB by the defendant, Mr. Rainbolt.

Mr. Rainbolt attempted to purchase shares of CNB held by certain of the Bank's minority shareholders. Under the terms of the purchase agreement he agreed to acquire 52,800 shares of CNB, representing 52.8% of its outstanding stock. Some of the stock that he agreed to purchase was encumbered by a Right of Refusal Agreement. That agreement provided that if a shareholder received an offer to buy all or part of his encumbered stock, that prior to accepting he had to extend the offer "upon the same terms and conditions and for the same price" to the trustee for the shareholders of the encumbered CNB stock.

In compliance with the terms of the Right of Refusal Agreement, the shareholders notified the trustee of Mr. Rainbolt's offer. The trustee elected to purchase some but not all of the encumbered stock and none of the unencumbered stock. Mr. Rainbolt claims that the trustee's election to purchase only part of the shares was not "upon the same terms and conditions" as his offer because his offer contained the condition that he acquire all 52,800 shares. The selling shareholders declined to tender their shares to the trustee. It is not disputed that at the time of the filing of this suit, Mr. Rainbolt had gained effective control of the Bank by virtue of his stock purchase agreement.

CNB and Mr. Holton brought this suit alleging that Mr. Rainbolt's offer violated the Change in Bank Control Act, the Bank Holding Company Act and various provisions of the Clayton Act. Appended to the federal claims was a state claim that the minority shareholders wishing to sell to Mr. Rainbolt were acting in contravention of the Right of Refusal Agreements. A similar suit on the Right of Refusal Agreements was brought in Oklahoma state court.

The trial court dismissed all of the plaintiffs' federal claims on jurisdictional grounds and determined that the trustee's election to purchase some of the encumbered shares was not "upon the same terms and conditions" as Mr. Rainbolt's offer. It therefore granted Mr. Rainbolt's motion for summary judgment and denied the plaintiffs' motion for injunctive relief.

On appeal, the plaintiffs' first contention is that Mr. Rainbolt violated the Change in Bank Control Act, 12 U.S.C. § 1817. The provisions of that Act dictate that the acquisition of a national bank requires an express and prior non-disapproval by the Comptroller of the Currency. Mr. Rainbolt did not obtain the Comptroller's non-disapproval prior to obtaining control of the Bank; however, the Comptroller did issue a non-disapproval letter after Mr. Rainbolt acquired control.

The trial court held that the plaintiffs' claim under § 1817 was mooted by the issuance of the Comptroller's letter. While we expressly reserve any decision as to

* Honorable Ewing T. Kerr, United States Senior District Judge for the District of Wyoming, sitting by designation.

whether there is a private right of action under § 1817, we affirm the trial court's ruling. The plaintiffs' complaint alleges that Mr. Rainbolt's acquisition constitutes a violation of the law which could injure them or subject them to liability under federal statute. The Comptroller's letter obviated the possibility that he would declare Mr. Rainbolt to be in violation of § 1817(j). The potential for liability under § 1817(j) no longer being extant, the trial court properly declared the claim moot. Insofar as the plaintiffs seek review or airing of the Comptroller's decision to issue the letter, we note that the plaintiffs did not seek that relief in their complaint, and we decline to examine it here.

The plaintiffs also argue that the acquisition of CNB by Mr. Rainbolt was in fact an indirect acquisition by Thunderbird Bancshares, Inc., a bank holding company in which Mr. Rainbolt owns a controlling interest. The plaintiffs allege that such acquisitions violate the Bank Holding Company Act, 12 U.S.C. §§ 1841–1850, which limits to five percent the voting shares of any national bank which may be controlled by a bank holding company.

The trial court dismissed this claim for lack of jurisdiction citing our decision in *American Bank of Tulsa v. Smith,* 503 F.2d 784 (10th Cir.). In that case, we held that a federal district court has no jurisdiction to determine the merits of an alleged violation of the Bank Holding Company Act. The Act vests exclusive jurisdiction of such cases with the Federal Reserve Board. *Whitney National Bank v. Bank of New Orleans and Trust Co.,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386.

█ The plaintiffs argue that the trial court should have stayed the Comptroller of the Currency's decision regarding the proposed acquisition of CNB, and then directed the parties to submit the Bank Holding Company Act issue to the Board. *See American Bank of Tulsa v. Smith,* 503 F.2d 784 (10th Cir.). This relief was not sought in the plaintiffs' amended complaint, and consequently that issue was not before the trial court. We decline to consider the issue

so raised on appeal. The trial court properly dismissed the plaintiffs' claim regarding the Bank Holding Company Act.

The plaintiffs' third claim is that Mr. Rainbolt's acquisition of CNB was anticompetitive and in violation of sections 7 and 16 of the Clayton Act, 15 U.S.C. §§ 18, 26. The trial court dismissed this claim for lack of standing.

█ In *Reibert v. Atlantic Richfield Co.,* 471 F.2d 727, 731 (10th Cir.), we stated a standing test for antitrust cases:

"This prerequisite boils down to complainant proving that the antitrust violations are the proximate cause of his injury. Two elements are necessary to demonstrate proximate cause: (1) there is a causal connection between an antitrust violation and an injury sufficient to establish the violation as a substantial factor in the occurrence of damage; and (2) that the illegal act is linked to a plaintiff engaged in activities intended to be protected by the antitrust laws."

This test applies to actions arising under both section 4 and section 16 of the Clayton Act. *Reibert v. Atlantic Richfield Co.,* 471 F.2d at 731 (10th Cir.).

█ In applying this test to Mr. Holton, the current Chairman of the Board of Directors of CNB, the trial court held that any injury to him was only incidental. We agree. The injuries which he alleges include his potential ouster from the chairmanship of the Board of Directors, the diminution in value of his minority stock holdings, and a reduction in his ability to borrow funds. His ouster is not a result of any *anticompetitive* act, it is the consequence of his loss of majority control. While Mr. Holton may suffer the loss of his position, that is not cognizable injury under the antitrust laws. It is not the result of any lessening in competition. The potential diminution in stock value and his decreased ability to borrow are either too speculative in nature or too remote from the antitrust violation to serve as grounds for standing. *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707.

The Bank alleges two sorts of anti-competitive injury. The first sort includes allegations of injury resulting from the possibility of being compelled to deal with various organizations controlled by Mr. Rainbolt. The Bank alleges that existing relationships that it has would be damaged and that it might incur additional costs in dealing with those organizations. Like the injuries claimed by Mr. Holton, this sort of injury is not a result of any diminution in competition but rather the effect of a change in bank control. We do not hold that *no* legally cognizable injury of the sort alleged could result from this acquisition. We merely hold that whatever injury of that sort may result, it does not come within the ambit of the antitrust laws.

The Bank also alleges a variety of anticompetitive effects including diminution in competition, heightened barriers to entry and price-fixing. While these allegations do come within the purview of the antitrust laws, the Bank has no standing to raise them. The Clayton Act clearly provides that recovery thereunder is limited to those suffering anticompetitive injury. The trial court found that "there is no evidence the defendant Rainbolt has or will use his various interests to the detriment of Central National Bank." We have reviewed the record and do not find that factual finding to be clearly erroneous. A violation of the Act without resultant injury to the party bringing the claim is insufficient to confer standing. *World of Sleep, Inc. v. Stearns & Foster Co.*, 525 F.2d 40 (10th Cir.); *Bowen v. New York News, Inc.*, 522 F.2d 1242, 1255 (2d Cir.). The trial court properly dismissed the plaintiffs' antitrust claims for lack of standing.

Having determined that the trial court properly dismissed the federal claims prior to trial, we turn now to its resolution of the pendent state claim of the breach of the Right of Refusal Agreements. Pendent jurisdiction is a doctrine of discretion which is not to be routinely exercised. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. *See also Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct.

1372, 39 L.Ed.2d 577. In *Gibbs,* the Court stated that:

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

383 U.S. at 726, 86 S.Ct. at 1139 (footnotes omitted).

The Court's direction in *Gibbs* compels us to find that the trial court should not have considered the merits of the plaintiffs' pendent state claim. There remained no federal causes of action. *See Wham-O-Mfg. Co. v. Paradise Manufacturing Co.,* 327 F.2d 748 (9th Cir.). We therefore must reverse the trial court's determination regarding the rights of refusal as beyond its discretion, and remand that issue to the trial court with instructions to dismiss the pendent claim without prejudice.

We are aware that the Oklahoma Supreme Court has decided the merits of this claim in a collateral state proceeding. *Ollie v. Rainbolt,* 669 P.2d 275. The Oklahoma court noted there that the doctrine of res judicata was inapplicable to its resolution of the claim. Any further proceedings on this claim or the res judicata issue will have to be held in the state courts of Oklahoma.

It is therefore the judgment of this court that the judgment of the trial court is affirmed in part and reversed in part with instructions.

IT IS SO ORDERED.