**Richard H. WINTHER, Plaintiff,**

**v.**

**DEC INTERNATIONAL, INC., a Wisconsin corporation, d/b/a Dairy Equipment Company, Defendant.**

Civ. A. No. 85–M–1510.

United States District Court,
D. Colorado.

Sept. 18, 1985.

Thomas G. Gillooly, Anthony F. Renzo, Boulder, Colo., for plaintiff.

David J. Richman, Denver, Colo., for defendant.

---

**2.** Thus, the Defendant's argument that Rule 4(a)(1), Fed.R.App.P., provides her 60 days in which to perfect an appeal is relevant.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This is an action for compensatory and punitive damages brought by the plaintiff Richard Winther against DEC International, Inc. (DEC). DEC, a Wisconsin corporation, manufactures and sells dairy equipment products throughout the United States. Winther, a citizen of Colorado and former salesman for DEC, alleges that he was discharged in 1982 because he refused to enforce an exclusive dealing and full line forcing distribution system in violation of antitrust laws. Winther's claims for relief are based on federal antitrust law, state antitrust law, the tort of wrongful discharge, and breach of contract. Jurisdiction is asserted under 28 U.S.C. § 1337 and 28 U.S.C. § 1332. On July 11, 1985 DEC moved to dismiss for failure to state a claim for relief.

## I

The complaint alleges that DEC and its dealers agreed to exclusive dealing contracts in violation of Section 3 of the Clayton Act. See, e.g., *Standard Oil Co. of California v. United States*, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949); *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961). The defendant challenges the plaintiff's standing to seek relief for an injury unrelated to the anticompetitive effects of the defendant's distribution system. Section 4 of the Clayton Act provides that:

> Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15. While language of the statute is broad enough to cover every harm directly or indirectly attributable to the consequences of an antitrust violation, the courts have concluded that Congress intended a more limited application. For Winther to maintain an action based on the federal statute he must allege an antitrust injury, an injury of the type the antitrust laws were intended to prevent and which flows from the unlawful aspect of the defendant's activities. *See, Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 697–98, 50 L.Ed.2d 701 (1977). Additionally, his injury must not be too remote from the alleged anticompetitive conduct. *See, Illinois Brick Co. v. Illinois*, 431 U.S. 720, 726, 97 S.Ct. 2061, 2064–65, 52 L.Ed.2d 707 (1977).

Recent Supreme Court decisions have clarified the standing requirement of § 4. In *Blue Shield of Virginia, Inc. v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), the plaintiff, a consumer of subsidized psychotherapy services, sued Blue Cross and the Neuropsychiatric Society of Virginia, Inc., for an alleged conspiracy in violation of § 1 of the Sherman Act to refuse payment for the services of psychologists. While noting that Congress did not intend to allow every person tangentially affected by an antitrust violation to maintain an action under § 4, the Court held that the district court erred in granting a motion to dismiss, stating

> As a consumer of psychotherapy services entitled to financial benefits under the Blue Shield plan, we think it clear that McCready was "within that area of the economy . . . endangered by (that) breakdown of competitive conditions" resulting from Blue Shield's selective refusal to reimburse. *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 129 (CA9 1973).

*Id.* at 480–81, 102 S.Ct. at 2549. Limiting reimbursements to the services of psychiatrists could be expected to increase the price paid by the consumers of psychotherapeutic services.

In contrast, as an employee of DEC, Winther was not within an area of the economy endangered by the breakdown of competitive conditions as a result of the alleged

antitrust violations. In fact Winther would probably have benefited from DEC's increased revenue resulting from exclusive dealing and forced sales.

The principal standing case is *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), where the Court held that a labor union had no standing to challenge an alleged conspiracy of certain contractors and landowners to divert business to non-union firms. The Court observed that the Sherman Act was enacted to assure consumers the benefit of price competition and to protect the economic freedom of participants in the relevant market. *Id.* at 538. Since the Sherman Act was not designed to protect a union in disputes with employers with whom it bargains, the union had not alleged an injury of the type the antitrust statute was intended to prevent.

█ Similarly, Winther's injury is unrelated either to the degree of price competition, or to the degree of economic freedom of sellers of dairy equipment. His injuries result from the loss of his job; there is nothing in the language or history of the antitrust laws to suggest that Congress intended to protect employees from wrongful coercion or discharge. Winther has therefore not alleged an injury of the type the antitrust laws are intended to prevent.

The second factor noted in *Associated General* is the directness or indirectness of the asserted injury. Winther alleges that he was fired by DEC because he refused to implement DEC's unlawful scheme—a direct result of DEC's alleged effort to enforce unlawful exclusive dealing contracts. This is unlike the situation in *Associated General*, where the chain of causation passed from the defendants to the union contractors to the union. The directness of the injury is, however, not enough to overcome the fact that employment is not the area of economic activity sought to be protected.

Results of prior Tenth Circuit cases are entirely consistent with this analysis. In *Reibert v. Atlantic Richfield Co.*, 471 F.2d 727 (10th Cir.) *cert. denied*, 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973), the court held that an employee discharged because his job became redundant after a merger of two firms, had no standing to challenge the merger on antitrust grounds. In *Associated General* terms, the plaintiff did not suffer an antitrust injury because his job loss was not related to price competition or economic freedom of the participants in the oil market.

In *Central National Bank v. Rainbolt*, 720 F.2d 1183 (10th Cir.1983) the court held that a director of a corporation had no standing under the antitrust laws to challenge a takeover of the corporation. "His ouster is not the result of any *anticompetitive* act, it is the consequence of his loss of majority control. While Mr. Holton may suffer the loss of his position, that is not cognizable injury under the antitrust laws. It is not the result of any lessening of competition." *Id.* at 1186. Again, under the *Associated General* analysis, the plaintiff did not suffer an antitrust injury because he did not suffer an injury of a type the antitrust laws were designed to remedy; his potential discharge was unrelated to competition or economic freedom in the marketplace.

Winther relies principally on the Ninth Circuit's decisions in *Ostrofe v. H.S. Crocker Co., Inc.*, 670 F.2d 1378 (1982), *vacated and remanded*, 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983) (Ostrofe I) and *Ostrofe v. H.S. Crocker Co., Inc.*, 740 F.2d 739 (1984), *cert. dismissed*, —— U.S. ——, 105 S.Ct. 1155, 84 L.Ed.2d 309 (1985) (Rule 53) (Ostrofe II). In that case the plaintiff was forced to resign because he refused to participate in an alleged scheme to fix prices. A divided panel held that he had standing to bring an antitrust action under Section 4. *Ostrofe I* was based largely on the belief that because discharged employees are in a good position to enforce antitrust laws, they should have standing to sue. That view was rejected by the Seventh Circuit in a well reasoned opinion in *Bichan v. Chemetron*

*Corp.,* 681 F.2d 514 (1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1261, 75 L.Ed.2d 487 (1983).

*Ostrofe II,* was decided after the first decision was vacated and remanded by the Supreme Court in light of its decision in *Associated General.* In *Ostrofe II* the circuit court conceded that the plaintiff there was not injured by reason of a reduction of price competition or a restriction of his freedom to operate in the market for paper lithograph labels, but concluded that the plaintiff suffered an injury so integral to the scheme to eliminate competition that he suffered an antitrust injury. *Ostrofe II,* 740 F.2d at 746. Nothing in *Associated General* supports this interpretation of the scope of antitrust law.

Alternatively, in *Ostrofe II* the court relied upon a footnote in *Associated General* which reserved the question of "whether the direct victim of a boycott, who suffers a type of injury unrelated to antitrust policy, may recover damages when the ultimate purpose of the boycott is to restrain competition in the relevant market." *Associated General,* 459 U.S. at 540–41, n. 44, 103 S.Ct. at 910 n. 14. The Ninth Circuit believed that even if the plaintiff had suffered no antitrust injury, he nevertheless had standing because his injury was a direct result of a boycott.

The Ninth Circuit view is in conflict with the Tenth Circuit decision in *Reibert v. Atlantic Richfield Co., supra,* where the plaintiff suffered a "direct" injury, the loss of his job, unrelated to antitrust policy. *Reibert* was cited with apparent approval in both *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. at 488 n. 13, 97 S.Ct. at 697 n. 13, and *Associated General,* 459 U.S. at 541 n. 46, 103 S.Ct. at 910 n. 46. The Tenth Circuit view is binding on this court.

## II

Plaintiff also seeks relief based on state antitrust, contract, and tort claims. In response, DEC cites *Ritter v. Colorado Interstate Gas Company,* 593 F.Supp. 1279, 1285 (D.Colo.1984), an ADEA action in

which Judge Carrigan refused to exercise pendent jurisdiction over state law claims for wrongful discharge. *Ritter* is well reasoned but irrelevant since jurisdiction is premised here upon 28 U.S.C. § 1332. This court has a statutory obligation to decide state law claims within its original jurisdiction.

The Colorado antitrust law provides, in pertinent part:

> Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is declared illegal. Every combination, conspiracy, trust, pool, agreement, or contract intended to restrain or prevent competition in the supply or price of any article or commodity constituting a subject of trade or commerce in this state, or every combination, conspiracy, trust, pool, agreement, or contract which controls in any manner the price of any such article or commodity, fixes the price thereof, or limits or fixes the amount or quantity thereof to be manufactured, produced, or sold in this state, or monopolizes or attempts to monopolize any part of the trade or commerce in this state, is declared an illegal restraint of trade.

§ 6–4–101 C.R.S. The civil damages provision, the counterpart of § 4 of the Clayton Act, provides that "Any person, corporation, copartnership, trustee, or association shall also be liable to any person transacting or doing business in this state for any damages he may sustain by reason of the doing of anything declared unlawful in this article." § 6–4–108 C.R.S.

■ The Colorado Supreme Court has said that "decisions of federal courts construing the Sherman and Clayton Acts, although not controlling, are entitled to careful scrutiny in resolving issues arising under Colorado's antitrust statute." *People v. Colorado Springs Board of Realtors,* 692 P.2d 1055, 1061 (Colo.1984). Further, the Colorado Supreme Court has explained that the purpose of the state antitrust statute is to preserve free competition and protect the public against the evils of economic agreements in restraint of trade that

may be beyond the reach of federal law. *People v. North Avenue Furniture & Appliance,* 645 P.2d 1291 (Colo.1982). Since the purpose of the state and federal antitrust laws is identical, there is no reason to doubt that the two have similar standing requirements. Therefore, for the reasons already given in the discussion of the federal statute, Winther has not been injured "by reason of" the anticompetitive effect of DEC's alleged conduct on the market for dairy equipment. He therefore has not suffered an antitrust injury and has no standing to assert the state antitrust claim.

■ Next Winther asserts a claim based on the tort of wrongful discharge. In general the law of Colorado is that absent special consideration, an indefinite general employment agreement is terminable at will. I believe that confronted with the circumstances of this case, Colorado courts would follow the lead of the California Supreme Court in *Tameny v. Atlantic Richfield Co.,* 27 Ca.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). In *Tameny,* the court held that a plaintiff discharged for refusing to participate in an alleged illegal price fixing scheme could sue his former employer in tort for wrongful discharge. "We hold that an employer's authority over its employee does not include the right to demand that the employee commit a criminal act to further its interests, and an employer may not coerce compliance with such unlawful directions by discharging an employee who refuses to follow such an order." *Id.,* 610 P.2d at 1337. *Cf., Lampe v. Presbyterian Medical Center,* 41 Colo. App. 465, 590 P.2d 513 (1978) (citing cases which hold that a cause of action exists where an employee is discharged for exercising a statutorily created right.)

Accordingly, while the federal and state antitrust claims should be dismissed for failure to state claims sufficient for relief under those statutes, the claims for wrongful discharge from employment are properly presented under diversity jurisdiction. It is therefore,

ORDERED, that the first and second claims for relief are dismissed under F.R. Civ.P. 12(b)(6).