**Robert L. HUNT and Donald L. Sessions, Plaintiffs,**

v.

**HANIFEN IMHOFF INC., Walter F. Imhoff, Thomas R. Bishop, Russell B. Heise and the Colorado Municipal Bond Dealers Association, Inc. Defendants.**

and

**Prudential-Bache Securities, Inc., Involuntary Plaintiff and/or Defendant.**

**Civ. A. No. 87–F–653.**

United States District Court, D. Colorado.

Oct. 15, 1987.

Edward S. Barlock, Denver, Colo., for plaintiffs.

B. Lawrence Theis, Denver, Colo., for defendants Russell B. Heise and the Colorado Municipal Bond Dealers Association, Inc.

Kenneth L. Starr, Denver, Colo., for defendants Hanifen Imhoff Inc., Walter Imhoff and Thomas R. Bishop.

## ORDER

SHERMAN G. FINESILVER, Chief Judge.

This matter is before the Court on the following motions: 1) motion to dismiss for lack of standing, filed by Colorado Municipal Bond Dealers Association, Inc. ("CMBDA") and Russell B. Heise ("Heise"); 2) motion to stay action pending arbitration, filed by defendants Hanifen Imhoff Inc. ("Hanifen Imhoff"), Walter F.

Imhoff ("Imhoff"), and Thomas R. Bishop ("Bishop") (collectively the "Hanifen defendants"); and 3) motion to dismiss, filed by defendant Prudential-Bache Securities, Inc. ("Prudential-Bache"). For the reasons stated below, CMBDA and Heise's motion to dismiss for lack of standing is GRANTED. Therefore, we need not address the remaining motions.

This is an antitrust case. In a two-count complaint, plaintiffs allege violations by defendants of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2. The complaint alleges a conspiracy by the CMBDA to fix the price of municipal and school district bonds and to preclude plaintiffs from marketing and distributing municipal and school district bonds except on terms "controlled" by defendants. Plaintiffs seek an injunction and an award of damages of $899,925 which they claim they would have stood to gain as "agents" on a single contract for the refunding of the debt of Adams and Aurora School District 28-J ("school district"). In addition, they seek trebling of the damages under Section 4 of the Clayton Act, 15 U.S.C. § 15, as well as attorney fees and costs.

In 1985, plaintiffs were employees of, or were independent contractors associated with, Blinder-Robinson Company ("Blinder-Robinson"), a business engaged in the sale of securities in Colorado. During this time period, plaintiffs approached Mr. James Anderson, a vice president of Prudential-Bache, to advise him that they were aware that the school district was about to issue a $91 million refunding of debt. (Anderson Affidavit, Defendants' Motion Exhibit A). The plaintiffs did not enter a written contract with Prudential-Bache. However, it was understood that plaintiffs and/or Blinder-Robinson would receive a finder's fee if Prudential-Bache obtained the bond refunding business. (*Id;* January 8, 1986 letter from James Anderson, Plaintiff's Response Exhibit 2.)

In August and again in September, 1985, the school board considered Hanifen Imhoff and Prudential Bache as bond underwriters for the refunding of its debt. (Plaintiff's state court complaint, Defend- ants' Motion Exhibit B). However, the school district granted the underwriting agreement to Hanifen Imhoff.

Since we have considered affidavits and exhibits outside of the complaint, this motion to dismiss shall be treated as a motion for summary judgment, pursuant to Fed.R. Civ.P. 12(b). Summary judgment is appropriate only if there are no genuine issues as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, and all doubts resolved in favor of the existence of triable issues of fact. *World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.), *cert. denied,* 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985).

We agree with defendants' argument that plaintiffs lack standing to assert a federal antitrust claim because plaintiffs have not suffered injury resulting from violations of the antitrust laws. Therefore, summary judgment in favor of defendants is appropriate.

Section 4 of the Clayton Act, 15 U.S.C. § 15, provides in pertinent part that:

... any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee ...

While the language of Section 4 appears broad, the United States Supreme Court has in recent years curtailed the class of persons who are entitled to seek treble damages under the antitrust laws. *See Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). To maintain a federal

antitrust action, the plaintiff must allege an antitrust injury, an injury of the type the antitrust laws were intended to prevent and which flows from the unlawful aspect of the defendant's activities. *See Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.,* 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Additionally, the injury must not be too remote from the alleged anticompetitive conduct. *See Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). The antitrust laws were not intended to afford protection to those only tangentially affected by the antitrust violation. *Associated General Contractors, supra.*

■ The Supreme Court has identified several factors to determine if a plaintiff has proper standing to assert a federal antitrust claim. These factors are: 1) whether the injury was of a type Congress sought to redress with the antitrust laws; 2) the directness or indirectness of the resulting injury; 3) the nature of the plaintiff's injury and the relationship between that injury and the violation; 4) the speculative nature or difficulty of proving injury; 5) the risk of duplicative recoveries or complex apportionment of damages; and 6) the existence of more direct victims. *Associated General Contractors,* 459 U.S. at 538–546, 103 S.Ct. at 908–13. In *Cargill, Inc. v. Montfort of Colorado, Inc.,* —— U.S. ——, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), the Supreme Court further held that courts must be particularly sensitive to the potential for multiple lawsuits and duplicative recoveries.

■ Analyzing the pleadings in accordance with these factors leads to a conclusion that plaintiffs lack standing to bring these federal antitrust claims. Plaintiffs' injuries are unrelated to the degree of price competition of the municipal bond refunding market. Their injuries, if any, result from their failure to obtain a commission from the refunding of the school district's bonds. There is no indication that Congress intended the antitrust laws to apply to injuries such as these.

Additionally, plaintiffs' claims are too indirect to any antitrust violations. Plain-

tiffs stood to gain only if Prudential-Bache first obtained the bond refunding contract with the school board. Thus, Prudential-Bache is in a better position to assert an antitrust violation by defendants. However, Prudential-Bache has not indicated any interest in filing such a suit; instead, Prudential–Bache has filed a motion for dismissal from this action. The school district is also a potential plaintiff since it arguably paid higher prices for the issuance of its bonds than it would have paid in a competitive market. Further, since Blinder-Robinson may have been entitled to a portion of the management fee, Blinder-Robinson may also have suffered antitrust injuries. Therefore, other parties are available, and in a better position to bring suit on an antitrust violation, if one exists.

Plaintiffs' damages claim is speculative because their claim is completely derivative of any claim asserted by Prudential-Bache. There is no evidence of what plaintiffs' compensation would be if Prudential–Bache obtained the bond refunding contract. There exists the danger of complex apportionment of damages, since plaintiffs, the school district, Prudential-Bache and Blinder-Robinson all have claims in any potential antitrust claims. Finally, due to the availability of all these potential plaintiffs, defendants may be exposed to multiple lawsuits and duplicative recoveries. Thus, all of the factors militating against a grant of standing are present.

Tenth Circuit cases both before and after *Associated General Contractors* are in accord with this analysis. In *Reibert v. Atlantic Richfield Co.,* 471 F.2d 727 (10th Cir.), *cert. denied,* 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973), the court held that an employee discharged because he lost his job due to a merger of two firms could not challenge the merger on antitrust grounds. The plaintiff simply did not suffer an antitrust injury which was related to price competition or economic freedom of sellers in the marketplace. *See also, Central National Bank v. Rainbolt,* 720 F.2d 1183 (10th Cir.1983); *Jones v. Ford Motor Co.,* 599 F.2d 394 (10th Cir.1979).

Since we find that defendants are entitled to judgment in their favor, we need not decide the remaining pending motions. Accordingly,

IT IS ORDERED that the motion to dismiss for lack of standing, filed by defendants Colorado Municipal Bond Dealers Association, Inc. and Russell B. Heise shall be treated as a motion for summary judgment, pursuant to Fed.R.Civ.P. 12(b). The motion is GRANTED. The Clerk of Court is DIRECTED to enter summary judgment in favor of the defendants and against the plaintiffs. Each party to bear their or its own costs and fees.