875 F.2d 865
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LOU BUCH ASSOCIATES, INC., Plaintiff-Appellant,
v.
SANYO ELECTRIC, INC., Defendant-Appellee.
 No. 88-1164.
 United States Court of Appeals, Sixth Circuit.
 May 22, 1989.
 
 Before MERRITT and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment for the defendant in a diversity case that arose out of the termination of an electronic products sales representation agreement. It is unclear to us whether the district court found that the defendant had interfered in bad faith with the plaintiff's performance under the contract; accordingly, we shall certify that question to the district court.
 
 
 2
 * Defendant Sanyo Electric, Inc. is the exclusive U.S. importer and distributor of consumer electronics products manufactured by Sanyo's corporate owners in Japan. From the early 1970s until November 1, 1984, plaintiff Lou Buch Associates ("LBA") was one of eighteen independent sales organizations representing Sanyo in different geographical areas. LBA's territory was the State of Michigan.
 
 
 3
 The present litigation stemmed from Sanyo's termination of LBA as a sales representative under a 1983 Sales Representative Agreement. This 27-page agreement, which superseded a 5-page agreement signed between Sanyo and LBA in 1976, contained provisions the relevant portions of which may be summarized as follows:
 
 
 4
 Sec. 5. Sanyo would assign each sales representative a quarterly sales quota.
 
 
 5
 Sec. 11.2 Either party was originally given the option to terminate the agreement upon 60 days notice. This provision was deleted in an addendum adopted as a result of the complaints of a number of sales representatives.
 
 
 6
 Sec. 11.4 Sanyo could "immediately terminate this Agreement upon written notice to that effect" if the sales representative did not meet its overall sales quota for two consecutive quarters, or did not meet sales quotas in at least 50% of Sanyo's product categories for two consecutive quarters. The first quarter as to which this provision was effective was the quarter beginning in March of 1984.
 
 
 7
 Sec. 12.1 In the event of termination of the agreement, Sanyo agreed to pay the representative its commissions for sales obtained prior to the effective date of termination.
 
 
 8
 Sec. 12.2 Neither Sanyo nor the representative would be liable to the other, or to any third party, "solely by reason of the expiration or termination of this Agreement due to any reason whatsoever, for any losses or damages of any kind whatsoever, including, but not limited to, direct, indirect, special, consequential or incidental damages, sustained by reason of such termination...."
 
 
 9
 Sec. 17 Sanyo disclaimed liability, as it had in the 1976 agreement, for delays in the shipment of merchandise. "Any failure, prevention of or delay in any delivery as herein provided shall not constitute a breach of this Agreement...."
 
 
 10
 Sec. 22 The agreement would be interpreted under California law.
 
 
 11
 The agreement went into effect on December 1, 1983. Thereafter, LBA's monthly and quarterly quotas were not met. Sanyo management complained about this several times to Lou Buch, LBA's president, and Buch replied that his quotas were not being met because Sanyo was slow in making shipments to him. (The quotas were calculated on the basis of products shipped, as opposed to orders placed.)
 
 
 12
 In a letter dated October 1, 1984, the national sales manager for Sanyo notified LBA that Sanyo was terminating its sales representation agreement with LBA effective November 1, 1984, because of LBA's failure to meet its sales quotas for the March-April-May quarter and the June-July-August quarter. LBA and Lou Buch then filed a federal court complaint naming Sanyo, Sanyo Electric Company, Ltd., Sanyo Electric Trading Company, Ltd., and Highland Appliance Company, Inc. as defendants.
 
 
 13
 As amended on March 7, 1985, the complaint had six counts. Count 1 alleged that the 1983 agreement was a contract of adhesion that was unenforceable under California law because it gave Sanyo a right to terminate without cause and because it set "impossible" quotas. Count 2 alleged that Sanyo's termination of LBA as a sales representative was wrongful because Sanyo failed to take into account orders that had been placed by plaintiff but not filled by Sanyo. Count 3 charged Sanyo with an unreasonable restraint of trade in violation of Section One of the Sherman Act, 15 U.S.C. Sec. 1, and charged all defendants with violating the Robinson-Patman Act. Count 4 charged the defendants with breach of contract in failing to pay certain commissions, maliciously failing to ship LBA's orders, giving other sales representatives favored treatment, and terminating LBA while other sales representatives who did not meet their quotas were not terminated. Count 5 set forth a claim under RICO. Count 6 alleged that Sanyo broke an implied covenant of good faith and fair dealing by failing to fill LBA's orders, by setting quotas "not possibly attainable by Plaintiff," and by giving other sales representatives favored treatment.
 
 
 14
 On August 13, 1985, following a hearing, the district court entered an order dismissing with prejudice all defendants except Sanyo and Highland; dismissing with prejudice Count 3 of the Amended Complaint; and dismissing Lou Buch as an individual plaintiff with respect to all counts except Count 5. On January 16, 1986, the court dismissed Highland as a defendant. On June 6, 1986, after a hearing on Sanyo's motion for summary judgment, the court dismissed Counts 5 and 6. The dismissal of the RICO count effectively dismissed Lou Buch as a plaintiff.
 
 
 15
 On January 29, 1987, in a ruling announced from the bench, the court denied LBA's motion for reconsideration of the disposition of Count 6. The court also dismissed Counts 1 and 2, and dismissed Count 4 except as to the claim for commissions owing to LBA at the time of termination. On July 21, 1987, the unpaid commissions issue was dismissed on stipulation of the parties. This stipulation and dismissal became final on January 14, 1988. LBA then brought this appeal, challenging the district court's decision to grant summary judgment for Sanyo on Counts 1, 2, 4, and 6.
 
 II
 
 16
 We are in agreement with most of what the district court said about these four counts in its bench ruling of January 29, 1987. We are perplexed however, by a passage of the transcript in which the court commented on Seaman's Direct Buying Service, Inc. v. Standard Oil Co. of California, 206 Cal.Rptr. 354, 686 P.2d 1158 (Cal.1984), one of the key California cases establishing a tort remedy for breach of an implied covenant of good faith in a commercial contract. Following a precis of Seaman's, the court offered the following comparison of that case with the instant case:
 
 
 17
 "This was a case were the parties had reached a contract which was necessary to the performance of other work by plaintiff. After earlier difficulties which interfered with the performance of the contract were cleared up, the defendant then refused to acknowledge that the contract existed and as a result the plaintiff had to discontinue his operations, despite the fact that the court found that it had a binding contract. It is true that the defendant interfered in bad faith with the plaintiff's performance under the contract, thereby making it impossible to terminate his dealership. The situation is not very different from Seaman's. The California courts have not, themselves, however, extended Seaman's and I do not think that it is appropriate for this court to do so on its own." (Page 13 of the transcript of the proceedings had on January 29, 1987. Emphasis supplied.)
 
 
 18
 When the district judge said "[i]t is true that the defendant interfered in bad faith with the plaintiff's performance under the contract, thereby making it impossible to terminate his dealership," it is not clear to us whether he was referring to the parties in Seaman's or the parties in present case. The sentence that followed--"The situation is not very different from Seaman's "--suggests he had been speaking of the parties in the case at bar. In oral argument before the panel, LBA asserted strenuously that this was indeed the case; Sanyo disagreed. The question is important, for if Sanyo interfered in bad faith with LBA's performance under the contract, the dismissal of the complaint was probably improper as to at least some of the counts.
 
 
 19
 California has adopted Sec. 1-203 of the Uniform Commercial Code, which states that "[e]very contract ... imposes an obligation of good faith in its performance or enforcement." Cal.Com.Code Sec. 1203 (West 1964). Under this provision, neither party can do anything that would injure the right of the other to receive the benefits of the agreement, Comunale v. Traders & General Insurance Co., 50 Cal.2d 654, 658, 328 P.2d 198, 200 (Cal.1958); in Seaman's the California court went so far as to allow an award of punitive damages in tort for a breach of the implied obligation of good faith.
 
 
 20
 Count 6 of LBA's amended complaint asks for compensatory and punitive damages in tort for breach of the implied covenant of good faith. If Sanyo did in fact interfere in bad faith with LBA's meeting the quotas set by the contract, the viability of Count 6 under California law would depend in part on the resolution of the question whether a "special relationship" existed between Sanyo and LBA. See Premier Wine & Spirits of South Dakota, Inc. v. E. & J. Gallo Winery, 644 F.Supp. 1431, 1436-37 (E.D.Cal.1986), aff'd, 846 F.2d 537 (9th Cir.1988) (discussing elements of "special relationship" needed to establish tort claim for breach of covenant of good faith and fair dealing). It would be unnecessary for us to enter the thicket of California law in this area, however, if Sanyo did not interfere in bad faith with LBA's performance of the contract.
 
 
 21
 A finding of bad faith interference might dictate the reinstatement of Count 2 (wrongful termination of the contract) and Count 4 (breach of contract). The claim in Count 1 that the contract is unenforceable might also have merit, at least with respect to the section of the contract in which Sanyo disclaims all liability for damages arising from the termination of the contract.
 
 
 22
 It may well be that the district court intended to refer to the facts in Seaman's, not the present case, when it said that "[t]he defendant interfered in bad faith with the plaintiff's performance under the contract." Because we are not sure, however, we think it best to ask the court for clarification.
 
 
 23
 This case is removed from the active docket of this court, and the clerk is directed to request the district court to certify, by supplemental opinion, after a hearing, whether Sanyo interfered in bad faith with LBA's performance under the contract. The supplemental opinion should then reconsider and determine anew with written findings and conclusions whether LBA demonstrated the existence of a genuine issue of material fact on that question. Upon receipt of the district court's supplemental opinion the case will be restored to the active docket of this court.